Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BALJINDER SINGH<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center, DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Singh respectfully petitions this Court for a writ of habeas corpus challenging his unlawful re-detention and seeking his immediate release from immigration custody. This case arises from Respondents' abrupt termination of liberty that the Department of Homeland Security ("DHS") itself previously granted to Petitioner. After initially detaining Petitioner upon his entry into the United States, DHS affirmatively determined that Petitioner could be released on his own recognizance and permitted him to reside and work in the community subject to Alternatives to Detention ("ATD") supervision and regular reporting to U.S. Immigration and Customs Enforcement ("ICE"). For

approximately twenty-seven months, Petitioner complied with every condition imposed upon him, consistently appeared for his required ICE appointments, maintained lawful employment authorization, and pursued his pending asylum application before the Immigration Court. Nevertheless, on October 6, 2026, ICE officers intercepted Petitioner as he was leaving his residence on his bicycle to travel to work and immediately detained him without advance notice, without identifying any violation of his conditions of release, and without providing an individualized pre-deprivation hearing or meaningful opportunity to be heard.

2. Petitioner is a native and citizen of India who entered the United States without inspection on or about July 6, 2024. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien. DHS thereafter exercised its custody authority and released Petitioner on an Order of Release on Recognizance ("ROR") on or about July 7, 2024. As conditions of his release into the community, Petitioner was enrolled in ATD supervision and required to report to ICE as directed.

3. DHS served Petitioner with a Notice to Appear ("NTA") on July 7, 2024, charging him solely under INA § 212(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled. Petitioner has an asylum application pending before the Immigration Court and has been actively pursuing relief through those proceedings.

4. From the time of his release in July 2024 until his re-detention on October 6, 2026, Petitioner complied with DHS supervision. He consistently appeared for his required ICE appointments, maintained compliance with ATD requirements, and committed no violation of any condition imposed upon his release. Petitioner has no criminal history. He timely filed an asylum application, obtained valid employment authorization in connection with that application, and maintained gainful employment. Petitioner also has family ties in the United States. Throughout this

period, DHS knew Petitioner's whereabouts and retained the continuing ability to supervise him in the community.

5. On July 8, 2025, DHS issued Interim Guidance adopting the position that certain noncitizens who entered the United States without inspection are subject to mandatory detention under 8 U.S.C. § 1225(b), notwithstanding their prior release into the United States. That position is reflected in the Board of Immigration Appeals' decisions in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), which address the detention classification of certain noncitizens who entered without inspection. Petitioner disputes the application of § 1225(b) to his present circumstances and contends that, if detention is authorized, the applicable detention authority is 8 U.S.C. § 1226(a), particularly where DHS previously exercised its custody authority to release him on recognizance and permitted him to reside in the community while pursuing removal proceedings under 8 U.S.C. § 1229a.

6. This Petition, however, presents an independent constitutional defect that does not depend solely upon resolution of the statutory detention dispute. Regardless of whether Respondents characterize Petitioner's detention as arising under § 1225(b) or § 1226(a), DHS previously released Petitioner from physical custody and permitted him to remain at liberty for approximately twenty-seven months while he complied with every condition imposed upon him. Respondents thereafter terminated that existing liberty without providing advance notice, an individualized explanation demonstrating why detention had become necessary, a meaningful opportunity to respond, or a pre-deprivation hearing before a neutral decisionmaker.

7. On October 6, 2026, at approximately 8:00 a.m., Petitioner left his residence to travel to his place of employment, located approximately three miles from his home. Petitioner ordinarily traveled to work by bicycle. As he exited the parking lot of his residential property, ICE officers stopped

him and requested documentation concerning his immigration status. Petitioner complied with the officers' request and presented his valid employment authorization document, issued in connection with his timely filed asylum application.

8. Despite Petitioner's presentation of valid employment authorization and his longstanding compliance with ICE supervision, ICE officers immediately took him into custody. Petitioner had received no advance notice that DHS intended to revoke his release on recognizance. He had not missed any required ICE appointments, violated ATD requirements, committed any criminal offense, or otherwise engaged in conduct that had been identified to him as requiring renewed detention.

9. Following his arrest, ICE officers transported Petitioner to an ICE office. Petitioner again asked why he was being arrested and detained, but officers did not provide him with an individualized explanation for the sudden termination of his liberty. Petitioner informed ICE that he had a pending asylum application before the Immigration Court and provided his valid employment authorization document. Nevertheless, ICE continued his detention without affording him a meaningful opportunity to address the asserted grounds for detention or present evidence concerning his compliance, employment, family ties, and continued eligibility for release.

10. Before taking Petitioner into custody, Respondents did not provide notice of any proposed revocation of his release on recognizance, identify any alleged violation of his supervision conditions, disclose any individualized factual basis demonstrating that his continued liberty presented a danger or flight risk, or provide an opportunity to contest the proposed detention. Nor was Petitioner afforded an individualized pre-deprivation hearing before a neutral decisionmaker at which Respondents were required to justify terminating the liberty DHS had previously granted.

11. The circumstances of Petitioner's arrest underscore the absence of any apparent individualized necessity for immediate detention. Petitioner was not attempting to evade immigration

authorities, flee the jurisdiction, or disregard his reporting obligations. Rather, he was leaving his residence in the ordinary course of his daily life to travel to his authorized employment. His whereabouts were known to DHS, his asylum proceedings remained pending, and he had consistently complied with ICE supervision since July 2024. Respondents nevertheless detained him without identifying to him any changed circumstance warranting the abrupt termination of his release.

12. Petitioner's claim is therefore not merely a challenge to the conditions or duration of an uninterrupted period of immigration detention. He challenges Respondents' termination of an existing state of liberty that DHS itself affirmatively created and maintained for approximately twenty-seven months. The constitutional injury occurred when Respondents deprived him of that liberty without the notice, individualized assessment, and meaningful pre-deprivation process required by the Fifth Amendment.

13. Under the principles articulated in *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner contends that his substantial liberty interest in remaining free from physical confinement, the risk of erroneous deprivation, and the absence of any identified exigency required constitutionally adequate procedures before DHS revoked his previously granted release. The government's authority to administer immigration detention does not eliminate the Fifth Amendment's procedural protections when it seeks to terminate an existing liberty interest.

14. A subsequent custody review or bond proceeding cannot retroactively supply the process that was absent before Petitioner's liberty was taken. Petitioner therefore seeks a writ of habeas corpus directing Respondents to immediately release him from physical custody and restore him to the release and supervision status that existed immediately before his unlawful re-detention on October 6, 2026.

## JURISDICTION

15. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq*.

16. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

17. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

18. Venue is proper because Petitioner is detained in Adelanto Detention Center, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## PARTIES

19. Respondent Mark Bowen is sued in her official capacity as Warden of the Adelanto Detention Center. Respondent Bowen is the physical custodian of Petitioner.

20. Respondent David J. Venturella is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

21. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

22. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the

authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

23. Petitioner Singh is a native and citizen of India.

24. Petitioner entered the United States without inspection on or about July 6, 2024.

25. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien.

26. On or about July 7, 2024, DHS released Petitioner pursuant to an Order of Release on Recognizance ("ROR"), permitting him to reside in the United States subject to conditions of supervision.

27. As conditions of his release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to ICE as directed.

28. DHS served Petitioner with a Notice to Appear on July 7, 2024, charging him solely under INA § 212(a)(6)(A)(i), for being present in the United States without admission or parole.

29. Petitioner has an asylum application pending before the Immigration Court and has been pursuing that application through his removal proceedings.

30. Petitioner timely filed his asylum application and obtained valid employment authorization in connection with that application.

31. Since his release on or about July 7, 2024, Petitioner has complied with the conditions imposed upon him by DHS.

32. Petitioner consistently appeared for his required ICE appointments beginning in July 2024 and continued doing so until his re-detention on October 6, 2026.

33. Petitioner did not violate his ATD requirements or any other condition of supervision imposed upon his release.

34. Petitioner has no criminal history.

35. Petitioner maintained valid employment authorization and remained gainfully employed while residing in the United States.

36. Petitioner's place of employment was located approximately three miles from his residence.

37. Petitioner regularly traveled to his place of employment by bicycle.

38. Petitioner has family ties in the United States.

39. Throughout Petitioner's release, DHS remained aware of his whereabouts through ATD supervision and regular ICE reporting.

40. During approximately twenty-seven months of release, Petitioner consistently complied with DHS supervision and remained available to immigration authorities.

41. Prior to October 6, 2026, DHS had not informed Petitioner that he had violated any condition of his release or supervision.

42. Prior to October 6, 2026, Petitioner was not notified that ICE intended to revoke his release on recognizance or return him to physical custody.

43. On July 8, 2025, DHS issued Interim Guidance asserting that certain noncitizens who entered the United States without inspection remain subject to mandatory detention under 8 U.S.C. § 1225(b).

44. The Board of Immigration Appeals subsequently addressed the statutory detention classification of certain noncitizens who entered without inspection in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025).

45. Petitioner disputes the characterization of his present detention as mandatory detention under § 1225(b) and contends that, if detention is authorized, the applicable statutory authority is 8 U.S.C. § 1226(a).

46. On October 6, 2026, at approximately 8:00 a.m., Petitioner left his residence to travel to his place of employment.

47. Petitioner was riding his bicycle to work, which was located approximately three miles from his home.

48. As Petitioner exited the parking lot of his residential property, ICE officers stopped him.

49. ICE officers requested that Petitioner provide documentation concerning his immigration status.

50. Petitioner complied with the officers' request and presented his valid employment authorization document.

51. Petitioner's employment authorization had been issued in connection with his timely filed asylum application, which remained pending before the Immigration Court.

52. Despite Petitioner's presentation of valid employment authorization, ICE officers immediately detained him.

53. At the time of his detention, Petitioner had been living in the community on his own recognizance since approximately July 7, 2024.

54. Petitioner had consistently appeared for his required ICE appointments since July 2024 and had not violated his ATD requirements or other conditions of supervision.

55. Petitioner had no criminal history and was not informed that his detention was based upon any criminal conduct.

56. Petitioner had received no advance notice that ICE intended to arrest him or revoke his

previously granted release.

57. Petitioner was not attempting to evade immigration authorities, flee the jurisdiction, or disregard any obligation imposed by DHS. He was traveling from his residence to his place of employment.

58. Following his arrest, ICE officers transported Petitioner to an ICE office.

59. After arriving at the ICE office, Petitioner again asked officers why he had been arrested and detained.

60. ICE officers did not provide Petitioner with an individualized explanation for why his detention had suddenly become necessary.

61. Petitioner informed ICE officers that he had a pending asylum application before the Immigration Court.

62. Petitioner also provided his valid employment authorization document and explained that his authorization was based upon his timely filed asylum application.

63. Despite Petitioner's efforts to provide information concerning his immigration proceedings and employment authorization, ICE officers continued his detention without providing a meaningful opportunity to address the asserted grounds for his arrest.

64. Petitioner was not provided a meaningful opportunity to present evidence concerning his continued compliance with ICE supervision, gainful employment, family ties, pending asylum proceedings, or other circumstances bearing upon whether renewed detention was necessary.

65. Respondents did not identify to Petitioner any violation of his conditions of release or supervision that required his immediate detention.

66. Respondents did not identify to Petitioner any criminal conduct occurring during his period of release.

67. Respondents did not identify to Petitioner any failure to appear for an ICE appointment or other required proceeding.

68. Respondents did not inform Petitioner of any individualized finding that he presented a danger to the community or a risk of flight requiring immediate physical confinement.

69. Before Petitioner's detention, Respondents did not provide him with notice that they intended to revoke his previously granted liberty.

70. Respondents did not provide Petitioner with a meaningful opportunity to contest the proposed detention before taking him into physical custody.

71. Respondents did not provide Petitioner with an individualized pre-deprivation hearing before a neutral decisionmaker.

72. Respondents did not provide Petitioner an opportunity, before detention, to present evidence or argument concerning whether his continued liberty under ICE supervision remained appropriate.

73. Petitioner was therefore taken from a state of liberty in the community, which DHS had permitted for approximately twenty-seven months, and returned to physical confinement without advance notice or an individualized pre-deprivation hearing.

74. At the time Respondents revoked Petitioner's liberty, Petitioner had a consistent history of compliance with DHS supervision, no criminal history, gainful employment, valid employment authorization, a pending asylum application, and family ties in the United States.

75. Petitioner's detention occurred while he was engaging in an ordinary daily activity—traveling from his residence to his authorized employment—and not while violating any known condition of release.

76. Petitioner's compliance with ICE reporting and ATD supervision demonstrated that

DHS had successfully supervised him in the community for approximately twenty-seven months without any reported violation.

77. Respondents did not identify to Petitioner any new criminal conduct, supervision violation, failure to appear, attempt to abscond, or other individualized changed circumstance requiring his immediate re-detention.

78. Petitioner remains detained as a result of Respondents' October 6, 2026, decision to terminate his previously granted release on recognizance.

79. Regardless of whether Respondents contend that Petitioner's present detention is governed by 8 U.S.C. § 1225(b) or § 1226(a), Respondents did not provide Petitioner advance notice, a meaningful opportunity to respond, an individualized pre-deprivation hearing, or an explanation of any individualized necessity for immediate detention before depriving him of his physical liberty.

80. Petitioner seeks restoration of the liberty he possessed immediately before Respondents detained him on October 6, 2026, including reinstatement of his prior release on recognizance and any lawful conditions of supervision that existed before his re-detention.

## STATUTORY FRAMEWORK

81. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

82. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under

8 U.S.C. § 1225(b)(2).

83. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

84. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

85. On July 8, 2025, DHS issued a memo to all employees of ICE stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226],

is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)]. **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]**.
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 18, 2025) (emphasis original).

86. As a result, DHS now considers all noncitizens who have entered the United States without inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, to be subject to mandatory detention under section 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. §

1226(c)].” *Id.*

87. Shortly thereafter, the Board of Immigration Appeals (“BIA”) issued decisions reflecting the same interpretation. In Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board concluded that Immigration Judges lack bond authority over certain noncitizens present in the United States without admission because, in the Board’s view, § 1225(b)(2)(A) mandates detention of such “applicants for admission” during removal proceedings.

88. The Ninth Circuit has since confirmed that DHS's detention authority must derive from the statute enacted by Congress and may not be expanded through administrative interpretation. See Rodriguez Vazquez v. Bostock, 3: 25-cv-05240 (9th Cir. July 30, 2026). Rodriguez Vazquez reinforces that mandatory detention provisions must be applied according to their statutory terms and that DHS may not invoke mandatory detention where Congress has not authorized it.

89. Petitioner Singh entered the United States on or about July 6, 2024, without inspection. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter exercised its custody authority to release him on his own recognizance on or about July 7, 2024. As conditions of that release, Petitioner was enrolled in Alternatives to Detention (“ATD”) and required to report to ICE as directed. DHS served Petitioner with a Notice to Appear on July 7, 2024, charging him solely under INA § 212(a)(6)(A)(i). Petitioner thereafter remained at liberty in the United States for approximately twenty-seven months while complying with DHS supervision, consistently appearing for required ICE appointments, maintaining valid employment authorization based upon his timely filed asylum application, remaining gainfully employed, and maintaining family ties in the United States.

90. Because DHS affirmatively released Petitioner from physical custody on an Order of Release on Recognizance (“ROR”) and placed him in removal proceedings under INA § 240, Petitioner contends that any subsequent detention is governed by 8 U.S.C. § 1226(a), which provides a

discretionary custody framework and permits an individualized custody determination. Petitioner disputes that DHS may release him into the community, supervise him for approximately twenty-seven months, and thereafter invoke 8 U.S.C. § 1225(b) to categorically eliminate the individualized custody protections associated with § 1226(a).

91. Respondents' asserted statutory position is reflected in DHS's July 8, 2025 Interim Guidance, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), which address the detention classification of certain noncitizens who entered without inspection and the availability of Immigration Judge custody redetermination authority. Under that interpretation, certain noncitizens previously released into the United States may nevertheless be treated as subject to mandatory detention under § 1225(b).

92. Petitioner disputes the application of that statutory interpretation to his circumstances. Neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* resolves the independent constitutional question presented here: whether DHS may summarily terminate the liberty of an individual whom DHS previously released on his own recognizance and successfully supervised in the community for approximately twenty-seven months without providing constitutionally adequate pre-deprivation process. Those decisions address statutory custody classification and Immigration Judge authority; they do not adjudicate the distinct Fifth Amendment claim arising from the revocation of previously granted physical liberty without individualized procedural safeguards.

93. Respondents' position also fails to account for the procedural posture DHS itself created. DHS released Petitioner from physical confinement on his own recognizance, permitted him to reside and work in the community under supervision, required him to report regularly to ICE, and maintained that arrangement for approximately twenty-seven months while Petitioner complied with every condition imposed upon him. Petitioner therefore possessed an existing state of government-

authorized liberty before his October 6, 2026, re-detention.

94. Independent of the parties' dispute concerning whether § 1225(b) or § 1226(a) ultimately supplies the statutory detention authority, Petitioner contends that Respondents violated the Fifth Amendment by revoking his previously granted liberty without constitutionally adequate pre-deprivation process.

95. Following his release on or about July 7, 2024, Petitioner consistently complied with DHS supervision. He appeared for his required ICE appointments beginning in July 2024, complied with ATD requirements, remained available to immigration authorities, and was never advised that he had violated a condition of release or supervision. Petitioner has no criminal history.

96. Petitioner also has an asylum application pending before the Immigration Court, which he has been actively pursuing. He timely filed his asylum application, obtained valid employment authorization based upon that application, remained gainfully employed, and maintained family ties in the United States. DHS remained aware of Petitioner's whereabouts and immigration proceedings through his regular reporting and continuing supervision.

97. On October 6, 2026, at approximately 8:00 a.m., Petitioner left his residence to travel to his place of employment, located approximately three miles from his home. Petitioner regularly traveled to work by bicycle. As he exited the parking lot of his residential property, ICE officers stopped him and requested documentation concerning his immigration status. Petitioner complied with the officers' request and presented his valid employment authorization document.

98. Before this encounter, DHS had provided Petitioner no notice that it intended to revoke his release on recognizance or return him to physical custody. Petitioner had not missed his required ICE appointments, had not violated his ATD obligations, and had not been informed of any allegation that he had failed to comply with DHS supervision. Petitioner was simply traveling from his residence

to his place of employment in the ordinary course of his daily life.

99. Despite Petitioner's presentation of valid employment authorization and his history of compliance with ICE supervision, ICE officers immediately detained him. Petitioner was not arrested while attempting to evade immigration authorities, failing to report as directed, or violating any identified condition of release. Rather, he was intercepted while leaving his residence to travel to work.

100. Following his arrest, ICE officers transported Petitioner to an ICE office. Petitioner again asked why he had been arrested and detained. ICE officers did not provide him with an individualized explanation establishing why his continued liberty had suddenly become inappropriate or why immediate physical confinement was necessary.

101. Petitioner informed ICE officers that he had a pending asylum application before the Immigration Court and presented his valid employment authorization document issued in connection with his timely filed asylum application. Petitioner had consistently complied with ICE reporting requirements since July 2024 and had not been informed of any supervision violation.

102. Respondents nevertheless continued Petitioner's detention without first providing him a meaningful opportunity to address any asserted concern regarding his custody, compliance, immigration proceedings, employment, family ties, or other circumstances relevant to whether renewed detention was necessary.

103. Before revoking Petitioner's liberty, Respondents did not provide him with advance notice of the proposed deprivation or identify to him any individualized factual basis demonstrating that immediate detention was required. Petitioner was not afforded an opportunity to contest the proposed termination of his release before ICE officers took him into custody.

104. Respondents did not identify to Petitioner any criminal conduct that had occurred during his period of release. Petitioner has no criminal history.

105. Respondents did not identify to Petitioner any violation of his ATD requirements or ICE reporting obligations. Throughout approximately twenty-seven months of supervision, Petitioner had consistently complied with the conditions DHS imposed upon him.

106. Respondents did not identify to Petitioner any failure to appear for a scheduled ICE appointment or other required immigration proceeding. Petitioner had regularly appeared for his ICE appointments since July 2024 and remained available to immigration authorities.

107. Respondents did not identify to Petitioner any individualized changed circumstance arising during his approximately twenty-seven months of release that rendered his continued liberty inappropriate or required immediate re-detention. No alleged criminal offense, failure to appear, supervision violation, attempt to abscond, or other individualized basis for immediate confinement was communicated to Petitioner.

108. Respondents likewise did not provide Petitioner with an opportunity to present evidence or argument concerning his continued compliance, lack of criminal history, employment, pending asylum proceedings, family ties, valid employment authorization, or demonstrated ability to remain available to immigration authorities while residing in the community.

109. Petitioner was not afforded any individualized pre-deprivation hearing before a neutral decisionmaker. No such hearing occurred before ICE officers intercepted him outside his residence, took him into physical custody, and terminated the release on recognizance under which he had lived for approximately twenty-seven months.

110. Petitioner was therefore taken from an existing state of liberty in the community and returned to physical confinement without advance notice, without a meaningful opportunity to respond, and without an individualized pre-deprivation determination concerning whether his continued detention was necessary.

111. The absence of such process is particularly significant because DHS itself had previously determined that Petitioner could remain outside physical custody subject to supervision, and Petitioner thereafter complied with those conditions for approximately twenty-seven months. DHS knew his whereabouts, required regular reporting, and successfully maintained supervision without any reported violation. Moreover, at the time of his arrest, Petitioner was traveling to his authorized employment rather than engaging in conduct suggesting an attempt to evade immigration authorities.

112. The Supreme Court has recognized that conditional liberty, although subject to lawful restrictions, may constitute a substantial liberty interest protected by the Due Process Clause against arbitrary revocation. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Petitioner invokes that principle by analogy because DHS affirmatively released him from physical confinement, permitted him to remain in the community under supervision, and thereafter terminated that liberty without providing an individualized pre-deprivation hearing.

113. Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner, with the procedures required determined by the particular circumstances and the balancing of the affected interests. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972). Petitioner contends that, under the circumstances of his previously granted release, prolonged compliance, and absence of any identified exigency, the Fifth Amendment required meaningful individualized process before DHS terminated his existing liberty.

114. Respondents provided none of those pre-deprivation safeguards here. Petitioner was intercepted by ICE officers while leaving his residence on his bicycle to travel approximately three miles to work. He complied with the officers' request for immigration documentation and presented his valid employment authorization. Nevertheless, ICE immediately detained him despite his lack of criminal history, absence of any identified supervision violation, pending asylum proceedings, valid

employment authorization, gainful employment, family ties, and approximately twenty-seven months of compliance with DHS supervision.

115. Respondents did not provide Petitioner advance notice that his liberty would be revoked, identify to him an individualized factual basis for immediate detention before taking him into custody, afford him a meaningful opportunity to respond, or provide any individualized pre-deprivation hearing. Even after Petitioner was transported to the ICE office and again requested an explanation for his arrest, officers failed to provide him with an individualized reason or meaningful opportunity to address the basis for his continued detention.

116. Petitioner contends that the constitutional violation occurred when Respondents terminated his previously granted liberty on October 6, 2026, without constitutionally adequate pre-deprivation process. The injury is not limited to the duration or conditions of his subsequent detention; it arises from the Government's decision to revoke an existing state of liberty without first providing the procedural protections Petitioner asserts were required by the Fifth Amendment.

117. A later custody review or post-deprivation bond hearing cannot retroactively provide the process that was absent before Petitioner's physical liberty was taken. Such a proceeding would occur only after the challenged deprivation had already occurred and would not itself restore the pre-deprivation protections Petitioner alleges the Fifth Amendment required. Accordingly, Petitioner contends that an order providing only a subsequent bond hearing would not fully remedy the constitutional injury arising from the October 6, 2026, revocation of his previously granted liberty.

118. Accordingly, Petitioner seeks a writ of habeas corpus directing Respondents to immediately release him from physical custody and restore him to the liberty that existed immediately before his October 6, 2026, re-detention, including reinstatement of his prior release on recognizance and the lawful conditions of supervision previously imposed by DHS.

## CLAIMS FOR RELIEF

## COUNT ONE

### Violation of Petitioner's Procedural Due Process Rights

119. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

120. The Fifth Amendment prohibits the government from depriving a person of liberty without due process of law.

121. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (3) the governmental interests at stake.

122. The private interest at stake here—freedom from physical detention—is among the most fundamental liberty interests protected by the Constitution.

123. Petitioner possessed an existing and substantial liberty interest arising from DHS's prior decision to release him on his own recognizance and permit him to remain at liberty in the community subject to ATD supervision and regular ICE reporting requirements.

124. For approximately twenty-seven months, Petitioner remained at liberty pursuant to DHS's release decision while complying with the conditions imposed upon him. He consistently appeared for required ICE appointments, complied with ATD requirements, maintained valid employment authorization based upon his pending asylum application, remained gainfully employed, maintained family ties in the United States, and remained continuously available to immigration authorities.

125. Petitioner has no criminal history and, prior to October 6, 2026, had never been advised that he violated any condition of his release or supervision.

126. The risk of erroneous deprivation was substantial because Respondents revoked

Petitioner's previously granted liberty without advance notice, without identifying to Petitioner any violation or changed circumstance requiring detention, without affording Petitioner a meaningful opportunity to respond, and without providing an individualized pre-deprivation determination before a neutral decisionmaker.

127. Additional procedural safeguards—including advance notice of the proposed detention, disclosure of the factual and legal basis for revocation, a meaningful opportunity to present contrary evidence and argument, and an individualized pre-deprivation hearing—would have substantially reduced the risk of erroneous deprivation while imposing comparatively modest administrative burdens upon Respondents, particularly given their continuing ability to supervise Petitioner in the community.

128. On October 6, 2026, at approximately 8:00 a.m., Petitioner left his residence on his bicycle to travel to his place of employment, located approximately three miles from his home. As he exited the parking lot of his residential property, ICE officers stopped him and requested documentation concerning his immigration status. Petitioner complied and presented his valid employment authorization document.

129. Prior to taking Petitioner into custody, Respondents failed to provide:

a. advance notice that DHS intended to revoke his previously granted liberty;

b. notice of any alleged violation, changed circumstance, or other individualized basis for detention;

c. a meaningful opportunity to contest the factual or legal basis for detention;

d. an individualized custody determination communicated to Petitioner; or

e. a pre-deprivation hearing before a neutral decisionmaker.

130. Despite Petitioner's presentation of valid employment authorization and his approximately

twenty-seven months of compliance with DHS supervision, ICE officers immediately detained him while he was traveling to work.

131. After being taken into custody and transported to an ICE office, Petitioner again asked why he was being detained. Respondents did not provide him with an individualized explanation demonstrating why detention had suddenly become necessary.

132. Petitioner informed ICE that he had a pending asylum application before the Immigration Court and presented his valid employment authorization document issued in connection with his timely filed asylum application. Petitioner had consistently complied with DHS supervision and appeared for his required ICE appointments since July 2024.

133. Respondents nevertheless detained Petitioner without providing him any meaningful opportunity to explain his circumstances, present evidence concerning his compliance, employment, family ties, pending immigration proceedings, or otherwise contest the proposed deprivation before his liberty was taken.

134. Respondents did not identify to Petitioner any criminal allegation, violation of ATD requirements, missed ICE appointment, violation of another condition of supervision, or other intervening event that justified the sudden termination of his previously granted liberty.

135. Nor did Respondents provide Petitioner with any individualized determination, before detention, that he presented a danger to the community, a risk of flight, or any other circumstance requiring immediate physical confinement.

136. Respondents therefore revoked Petitioner's existing liberty without constitutionally adequate notice, without a meaningful opportunity to be heard, and without an individualized pre-deprivation process.

137. Under the circumstances alleged here, Petitioner contends that the Government's interests

did not justify dispensing entirely with pre-deprivation process. Petitioner had remained subject to ongoing DHS supervision for approximately twenty-seven months, had consistently appeared as directed, and was traveling from his residence to his authorized employment when ICE officers intercepted him. No individualized exigency requiring detention without advance process was identified to Petitioner. Respondents had maintained the ability to locate and supervise him throughout his release, and the circumstances alleged do not establish why meaningful procedures could not have been provided before terminating his liberty.

138. Petitioner contends that the constitutional violation occurred when Respondents deprived him of his previously granted liberty without providing the process constitutionally required before that deprivation.

139. A later custody review or other post-deprivation proceeding cannot retroactively provide the notice, opportunity to respond, and individualized determination that Petitioner contends were constitutionally required before he was taken into physical custody.

140. Petitioner's detention therefore violates the Due Process Clause of the Fifth Amendment, and habeas relief restoring Petitioner to the liberty he possessed immediately before his October 6, 2026, detention is warranted.

## COUNT TWO

## Violation of Fifth Amendment Right to Substantive Due Process

141. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

142. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

143. Petitioner entered the United States without inspection on or about July 6, 2024. Following

his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter exercised its custody authority to release him on his own recognizance on or about July 7, 2024, subject to ATD supervision and regular ICE reporting requirements.

144. DHS served Petitioner with a Notice to Appear on July 7, 2024, charging him solely under INA § 212(a)(6)(A)(i). Petitioner thereafter remained at liberty in the United States for approximately twenty-seven months while his immigration proceedings remained pending.

145. Throughout that period, Petitioner complied with the conditions imposed upon him by DHS. He consistently appeared for required ICE appointments, complied with ATD requirements, remained continuously available to immigration authorities, maintained valid employment authorization based upon his pending asylum application, remained gainfully employed, maintained family ties in the United States, and has no criminal history.

146. On October 6, 2026, at approximately 8:00 a.m., Petitioner left his residence on his bicycle to travel to his place of employment, approximately three miles from his home. As he exited the residential parking lot, ICE officers stopped him and requested documentation concerning his immigration status. Petitioner complied with the request and presented his valid employment authorization document.

147. Despite Petitioner's history of compliance, valid employment authorization, and absence of any identified supervision violation, ICE officers immediately detained him while he was traveling to work.

148. After being transported to an ICE office, Petitioner asked why he was being detained. Respondents did not identify to him any criminal conduct, violation of ATD requirements, missed ICE appointment, violation of another condition of supervision, or other individualized factual circumstance demonstrating that his physical confinement had become necessary.

149. Petitioner informed ICE that he had a pending asylum application and presented his valid

employment authorization document. Respondents nevertheless continued his detention without identifying to him any individualized change in his circumstances warranting the termination of the liberty DHS had previously granted him.

150. Petitioner's re-detention was not preceded by any identified failure to comply with DHS supervision, criminal conduct, attempt to abscond, or other intervening event demonstrating that the Government's prior determination permitting Petitioner to remain at liberty in the community was no longer appropriate.

151. The statutory position under which Respondents may seek to justify Petitioner's detention is reflected in DHS's July 8, 2025 Interim Guidance and decisions including *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), notwithstanding DHS's prior decision to release Petitioner from physical custody and his subsequent approximately twenty-seven months of compliance.

152. Petitioner disputes the application of this categorical statutory interpretation to his detention under 8 U.S.C. § 1225(b). But even apart from the statutory dispute, civil immigration detention remains subject to the constraints of the Due Process Clause. *See Zadvydas*, 533 U.S. at 690. Petitioner contends that the abrupt termination of his previously granted liberty, without an identified individualized justification and notwithstanding his demonstrated compliance, is arbitrary under the circumstances presented.

153. Here, Respondents permitted Petitioner to remain at liberty under DHS supervision for approximately twenty-seven months. During that period, Petitioner demonstrated his continued availability to immigration authorities by consistently complying with reporting requirements and appearing as directed. At the time of his October 6, 2026, arrest, Petitioner was traveling from his residence to his authorized employment and complied with ICE officers' request to produce

documentation.

154. Respondents nevertheless terminated Petitioner's physical liberty without identifying to him any individualized circumstance showing that detention had become necessary to address a danger to the community, a risk of flight, a failure to comply with DHS supervision, or another legitimate custody concern.

155. Under these circumstances, Petitioner contends that subjecting him to physical confinement based upon a categorical interpretation of the governing detention statute, despite DHS's prior release decision and his approximately twenty-seven months of demonstrated compliance, is arbitrary and lacks an adequate relationship to any identified individualized need for detention.

156. The Government possesses legitimate interests in ensuring appearance at immigration proceedings and protecting the community. But Respondents did not identify to Petitioner any individualized facts demonstrating that his renewed detention was necessary to further either interest where Petitioner has no criminal history, consistently appeared as required, complied with DHS supervision, maintained gainful employment, and was traveling to work when ICE officers detained him.

157. Petitioner contends that Respondents' re-detention of him under these circumstances constitutes an arbitrary deprivation of physical liberty in violation of the substantive component of the Fifth Amendment's Due Process Clause.

158. Petitioner's continued physical confinement perpetuates that alleged unconstitutional deprivation of liberty.

159. Accordingly, Petitioner seeks immediate release from physical custody and restoration of the liberty he possessed immediately before Respondents detained him on October 6, 2026.

## COUNT THREE

## Violation of the Immigration and Nationality Act

160. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

161. Petitioner entered the United States without inspection on or about July 6, 2024. Shortly thereafter, DHS detained him pursuant to a Form I-200, Warrant for Arrest of Alien, and released him on his own recognizance on or about July 7, 2024, subject to ATD supervision and regular ICE reporting requirements.

162. DHS thereafter permitted Petitioner to remain at liberty in the United States for approximately twenty-seven months while pursuing his pending asylum application before the Immigration Court and complying with the conditions of his release.

163. The statutory detention classification disputed in this Petition concerns whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) or discretionary detention under 8 U.S.C. § 1226(a).

164. DHS's July 8, 2025 Interim Guidance, *Matter of Q. Li*, and *Matter of Yajure-Hurtado* provide the principal administrative framework supporting the interpretation that certain noncitizens who entered without inspection remain subject to § 1225(b) notwithstanding their subsequent release into the United States.

165. Petitioner disputes the application of those authorities to his circumstances and contends that neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* resolves the distinct issue of whether DHS may terminate previously granted liberty following approximately twenty-seven months of successful supervision without constitutionally adequate individualized process.

166. Petitioner contends that his release on recognizance, placement in removal proceedings under INA § 240, and subsequent supervision in the community support application of the discretionary detention framework under 8 U.S.C. § 1226(a), rather than mandatory detention under § 1225(b). Under Petitioner's interpretation, DHS cannot categorically eliminate the individualized custody framework

applicable to him merely by invoking a revised interpretation of the detention statutes.

167. Petitioner therefore contends that Respondents' application of § 1225(b) to his present detention exceeds the detention authority properly applicable under the INA and is contrary to law.

168. Because Petitioner contends that his detention is not authorized under the applicable provisions of the INA, habeas relief under 28 U.S.C. § 2241 is warranted.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241;

2. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;

3. Declare that Respondents' revocation of Petitioner's previously granted liberty and continued detention violate the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act;

4. Order Petitioner's immediate release from immigration custody and restoration to his prior Order of Release on Recognizance, including the lawful conditions of supervision in effect immediately before his October 6, 2026 re-detention;

5. Enjoin Respondents from re-detaining Petitioner based on the same circumstances without constitutionally adequate procedures and lawful statutory authority, including pre-deprivation process to the extent required by the Fifth Amendment.

6. Enjoin Respondents from continuing to detain Petitioner absent constitutionally adequate procedures and lawful statutory authority;

7. Award Petitioner his reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;

8. Retain jurisdiction to enforce any order entered in this matter; and

9. Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully,

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am counsel for Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Center and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 9th day of October, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.